IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Antoine Jermaine Thornton, )
    Plaintiff, )
)
v. ) 1:16cv635 (GBL/TCB)
)
Harold W. Clarke, et al., )
    Defendants. )

## MEMORANDUM OPINION

THIS MATTER comes before the Court upon review of a Motion for Summary Judgment filed by the remaining defendants, D.A. Slaw and Marilyn L. Hill.[1] This case concerns claims asserted by plaintiff Antoine Jermaine Thornton, a Virginia inmate proceeding pro se, pursuant to 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment right to due process.

Defendants D.A. Slaw and Marilyn L. Hill have filed a Motion for Summary Judgment as well as a memorandum of law with supporting exhibits.[2] Dkt. Nos. 48–49. Plaintiff has filed a "Memorandum in Support of Reply to Motion for Summary Judgment." Dkt. No. 54. Plaintiff has also filed a "Motion for Settlement Agreement." Dkt. No. 57. The matter is now ripe for disposition. The issue before the Court is whether to grant defendants' Motion for Summary Judgment and plaintiff's Motion for Settlement Agreement. Because the Court concludes that there is no genuine issue of material fact as to the claims against defendants D.A. Slaw and

---

[1] By Order dated May 31, 2017, defendants Officer Gregory and Officer Hogge were dismissed from this matter and judgment was entered in favor of defendants Warden Wright, Sergeant Adams, and Captain Stith.

[2] At all relevant times, defendant Slaw was an Inmate Hearings Officer at Lawrenceville Correctional Center and defendant Hill was a Virginia Department of Corrections Contract Liaison at the Lawrenceville Correctional Center. Dkt. Nos. 49-1, 49-2.

1

Marilyn L. Hill, their Motion for Summary Judgment will be granted, and plaintiff's Motion for Settlement Agreement will be denied.

## I. Background

The record establishes the following facts.[3]

*The Underlying Incident*

On June 20, 2013, while incarcerated at Lawrenceville Correctional Center ("LCC"), plaintiff was removed from his cell for a cell search and directed to sit at a table in a common area of the pod. Amend. Compl. § IV. A few minutes later, a corrections officer began escorting plaintiff from the table to the "counsel's office" to be strip searched because jail staff had not searched plaintiff prior to his removal from the cell. Id. Staff had also failed to search the common area prior to plaintiff's removal from his cell. Id.

Shortly after plaintiff stood up to walk to the "counsel's office," a black bag fell to the ground. Id. Plaintiff asserts that the black bag fell "from under one of the [nearby] stool's [sic]" in the common area and hit his right leg. Id. A corrections officer, however, stated that he observed the black bag "fall from [plaintiff's] shorts when he got up." Dkt. No. 49-1 at 3 ¶ 8. The items recovered from the black bag included a cell phone, cell phone charger, and tobacco, and plaintiff was charged with unauthorized possession of a communications device and possession or use of tobacco products.[4] Id. at 2–3 ¶¶ 8-11.

---

[3] This recitation of facts relates only to defendants D.A. Slaw and Marilyn L. Hill. For purposes of the Motion for Summary Judgment, plaintiff's version of the disputed facts is taken as true to the extent that the facts not contradicted by the record. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[4] Specifically, in case number LVCC-2013-1381 plaintiff was charged with offense code 140 a. "possession or use of tobacco products," and in case number LCVV-2013-1382 plaintiff was charged with offense code 131 "Possession of Unauthorized Communication Devices, to include, but not limited to, cell phones."

*Notice of the Charges*

On June 21, 2013, Sergeant Adams "came to [plaintiff's] segregation cell door" and advised plaintiff of the charges against him, as well as his rights, by "read[ing] [plaintiff] both disciplinary offense report's [sic]." Amend. Compl. § IV. Plaintiff did not sign either Disciplinary Offense Report, and he contends that "Adams did not give [him] a copy of the report's [sic]." Id. Adams signed the offense report acknowledging that he served the report on plaintiff, but plaintiff refused to sign. Dkt. No. 49-1 at 2 ¶ 7, 47. The report states that plaintiff was assigned an offender advisor, that he wished to request a witness, and that he did not wish to request documentary evidence. Id. at 47.

*The Disciplinary Hearing Process*

During the pendency of his charges, plaintiff was placed on prehearing detention. Id. at 44–45. Under prison procedures, a prisoner placed on prehearing detention for charges contained in a Disciplinary Offense Report must be granted a hearing "no sooner than midnight of the second working day and no later than 15 calendar days after service of the Disciplinary Offense Report, unless a valid reason exists." Id. at 30. Procedures also dictate that an authorized continuance is required for hearings held more than "15 calendar days after service of the Disciplinary Offense Report if the offender is assigned to [prehearing detention]." Id. Such a continuance may be granted if the reporting officer, voluntary staff advisor, or a witness is "off duty or away from the facility on the date of the hearing." Id.

The disciplinary hearings were originally set for July 2, 2013, but were continued to July 11, 2013. Id. at 3–4 ¶¶ 9-10. The hearings were postponed, pursuant to prison procedure, "because [the] Reporting Officer . . . was away from [the facility] on the originally scheduled hearing date of July 2, 2013 and was not available for the hearing." Id. at 2 ¶ 7. On July 11,

3

2013, the disciplinary hearings were conducted in front of Hearing Officer Slaw, and at the beginning of each hearing, plaintiff was read the charges on the record. Id. at 2–3 ¶¶ 8, 10.

During the hearing on the possession of an unauthorized communication device charge, plaintiff testified that he had not received a copy of the Disciplinary Offense Reports. Id. at 2-4 ¶¶ 8-11. More specifically, when Slaw asked plaintiff whether he had been afforded all of his rights, plaintiff advised her that he had not been "afforded all of his rights" because he had not received a copy of the Disciplinary Offense Reports. Amend Compl. § IV. At that point, Slaw "very loudly asked [plaintiff] what he was talking about." Id.

Slaw, despite plaintiff's entreaties to do so, would not "check the footage during the actual hearing" to confirm whether plaintiff received copies of the offense reports. Id. But, it is within the hearing officer's discretion "to review camera footage," and hearing officer Slaw "did not find it necessary to review camera footage in this case." Dkt. No. 49-1 at 3 ¶ 8. These actions, according to plaintiff, are indicative of Slaw's unprofessional and unethical behavior during the hearing, which denied plaintiff due process. Amend. Compl. § IV.; Dkt. No. 54 at 2 ¶ 3.

Plaintiff further asserts that Slaw's "conduct became very unprofessional" and she began "yelling at some point's [sic] and cut[t]ing [him] off from presenting a full defense against the charges." Id. Nevertheless, plaintiff asked questions of the Reporting Officer and testified on his own behalf. Dkt. No. 49-1 at 3 ¶ 8. Specifically, plaintiff questioned the Reporting Officer after the officer testified that the black bag fell from plaintiff's shorts. Id. at 2-4 ¶¶ 8-11. Moreover, plaintiff stated that he never had possession of the black bag. Id. Plaintiff further stated that he submitted a request form to present the shorts that he wore at the time of the incident as evidence at the hearing, but Slaw never received such a request. Id.

4

Slaw found plaintiff guilty of both charges and imposed a penalty of 30 days in isolation, with time served. Id. at 3-4 ¶¶ 8-11. On July 29, 2013, plaintiff signed for and received copies of the Disciplinary Offense Report, and related documents, necessary for appeal. Dkt. No. 54-1, Ex. B.

## The Post-Hearing Process

As part of her duties, Hill "conducted the institutional review of [plaintiff's relevant] disciplinary charges on July 22, 2013 and signed the reports indicating that the penalty was proper for each charge." Dkt. No. 49-2 at 2 ¶ 6. Hill does not recall plaintiff appealing Slaw's decision regarding the charge for the unauthorized use of a communications device, nor does she "recall telling [plaintiff] that his appeal was missing." Id. at 2 ¶ 7. The records at LCC and the Virginia Corrections Information System database indicate that plaintiff did not appeal that charge. Id.

On August 26, 2013, a Unit Manager "contacted [Hill's] Office about the appeal's [sic] . . . and both [charges] were under consideration." Amend Compl. § IV. In plaintiff's view, "[t]his is proof that [Hill,] who control's [sic] the Contract Liaison Office, had direct knowledge and possession of the appeal for the [unauthorized possession of a communication device charge] on August 26, 2013," the day before plaintiff was transferred. Id.

On August 27, 2013, Hill wrote a memorandum dismissing the charge for possession or use of tobacco products based on "conflicting information regarding this offense." Dkt. No. 54-1, Ex. C. On that date, plaintiff became aware that there was no record of an appeal for the unauthorized communication device offense, and "as soon as he became aware that the appeal for the 131 offense was not addressed and missing, [he] begun [sic] to appeal and request an investigation and consideration, yet no one would correct the due process error . . . ." Dkt. No. 54 at 3–5 ¶ 4.

On March 13, 2014, the Offender Discipline Coordinator wrote a letter to plaintiff informing him that, regarding the unauthorized possession of a communications device charge, "[t]here is no record that [plaintiff] attempted to address [his] concerns/contentions through the Disciplinary Appeal Procedure. Additionally, there is no evidence to support [his] inference that staff interfered with the supposed disappearance of [his] Disciplinary Appeal." Dkt. No. 49-1 at 46. In an April 2, 2014 missive, the Offender Discipline Coordinator informed plaintiff that his facility level appeal of the unauthorized possession of a communications device charge was untimely, as previously stated in a February 12, 2014 letter. Dkt. No. 54-1, Ex. B.

## II. Standard of Review

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material[,]" and a "genuine" dispute of material fact will be found only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of proof for all relevant issues and must demonstrate that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Once a moving party has met its burden, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Bell v. Kolongo, No. 1:03CV501 (GBL), 2004 WL 3247156, at *7 (E.D. Va. Oct. 25, 2004) (quoting Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993)) ("In a 'summary judgment inquiry[, the Court] scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.'"), aff'd, 120 F. App'x 985

6

(4th Cir. 2005). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Unsubstantiated, conclusory claims without evidentiary support are insufficient to defeat a summary judgment motion. Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010), aff'd, 412 F. App'x 583 (4th Cir. 2011). In other words, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997).

### III. Analysis

Summary judgment in favor of defendants D.A. Slaw and Marilyn L. Hill is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that they did not violate plaintiff's Fourteenth Amendment due process rights.

An individual is not totally deprived of his constitutional protections when he is imprisoned for a crime. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). The protections afforded by the Due Process Clause of the Fourteenth Amendment, for example, do not vanish when a prisoner crosses a prison's threshold. Id. In other words, prisoners may not be deprived of life, liberty, or property without due process of law. Haines v. Kerner, 404 U.S. 519 (1972). Thus, prisoners maintain a constitutionally protected interest in the procedural due process protections of a disciplinary hearing, which guard against the arbitrary imposition of punishment by prison officials. See Wolff, 418 U.S. at 558.

Nevertheless, an inmate is not entitled to "the full panoply of rights due a defendant" in a criminal trial. Id. at 556. Rather, an inmate's due process rights are satisfied if he is provided advance written notice of the charges against him, he is permitted to call witnesses on his behalf,

7

and he is provided written findings of the outcome of the hearing. Id. at 561-68. With respect to the second requirement, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." Id. at 566.

### A. Defendant Slaw

Plaintiff alleges that his right to due process was violated by Slaw because she did not "check the footage of when the Serving Officer was suppose [sic] to serve the disciplinary report and penalty offer;" "contact the serving officer Sgt. Adams about the issue;" or "check the footage of the actual incident either." Amend. Compl. § IV. According to plaintiff, "[t]he video footage is a type of documentation that disciplinary bodies must review if relevant evidence is shown, [and] failure to review it, denied [him] due process." Id. Plaintiff further contends that Slaw "dishonestly suppressed evidence of innocence, i.e.; the video footage, conflicting officer's [sic] incident statement's [sic], investigation report's [sic] and the altered/tampered with chain of custody/possession form, . . . ." Id.

In addition, plaintiff contends that Slaw's "lack of dignity and decorum during the hearing for the 131 Offense denied [him] a full opportunity to conduct a defense," and that her "decision's [sic] and conduct during the hearing's [sic] was [sic] bias." Id. Finally, plaintiff asserts that "Slaw issued an unauthorized continuance base [sic] on a lie," and, therefore, he was not provided procedures "needed to ensure [his] due process right's [sic] in the disciplinary proceedings." Dkt. No. 54 at 2 ¶ 2.

As discussed above, an inmate's due process rights are satisfied if he is provided advance written notice of the charges against him, he is permitted to call witnesses on his behalf, and he is provided written findings of the outcome of the hearing. Wolff, 418 U.S. at 561-68. Plaintiff does not contend that Slaw, or other prison officials, failed to provide him with written findings of the outcome of the hearing. Nor does he contend that he was denied the opportunity to call

witnesses on his behalf. Instead, plaintiff asserts that Slaw's failure to "check the footage" concerning service of "the disciplinary report and penalty offer;" "contact the serving officer Sgt. Adams about the issue;" "check the footage of the actual incident;" and produce "investigation report's [sic] and the altered/tampered with chain of custody/possession form," resulted in a due process violation. Amend. Compl. § IV. Pursuant to federal law and intuitional procedure, hearing officers have the discretion to exclude certain evidence. See Dalton v. Hutto, 713 F.2d 75, 79 (4th Cir. 1983) (upholding a prison administrative body's decision to refuse to hear testimony on the grounds that it is cumulative or irrelevant); VDOC Operating Procedure 861.1 XV(D)(3) (stating that the institutional hearing officer "[s]hall rule on all matters of evidence - This includes, but is not limited to, ruling on relevancy and repetitiveness of the testimony provided at the hearing. It is not necessary to follow strict rules of evidence."). Therefore, Slaw's decision to exclude the evidence discussed by plaintiff was consistent with plaintiff's due process rights.

As to plaintiff's claim that his due process rights were violated because his disciplinary hearing was continued, there is no constitutional right to a disciplinary hearing on a specific date, and Slaw was authorized to continue plaintiff's hearings to July 11, 2013. According to the Virginia Department of Corrections Operating Procedures, when an "offender has been placed on [prehearing detention] or any other detention status for [a] Disciplinary Offense Report, the hearing should be held no sooner than midnight of the second working day and no later than 15 calendar days after service of the Disciplinary Offense Report, unless a valid reason exists." Dkt. No. 49-1 at 30. Valid reasons for granting a continuance include the reporting officer being "off duty or away from the facility on the date of the hearing." Id. In this case, Slaw determined, as a matter of fact, that the hearings had been postponed, "because [the] Reporting Officer . . . was away from [the facility] on the originally scheduled hearing date of July 2, 2013

and was not available for the hearing." Id. at 2 ¶ 7. Therefore, Slaw's decision to continue the hearing was consistent with prison operating procedure and plaintiff's due process rights. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D. Va.1980) (stating that federal courts generally will not review the accuracy of a prison administrative body's findings of fact).

Plaintiff's remaining due process claims rest solely upon his assertions that he was not served with a written copy of the charges against him. At the July 11, 2013 hearings, Slaw observed that Sergeant Adams had signed a Disciplinary Offense Report on June 21, 2013, acknowledging that he served that report on plaintiff, but plaintiff refused to sign. Dkt. No. 49-1 at 2 ¶ 7; Encl. D. Based on that information, Slaw concluded that plaintiff was served with written notice of the charges against him.

It is generally accepted that federal courts will not review the accuracy of a prison administrative body's findings of fact. See Kelly, 502 F.Supp. at 1376. Accordingly, such findings will be disturbed only if the actions of the hearing officer were arbitrary and capricious or constituted an abuse of discretion. Smith v. Rubulais, 659 F.2d 539, 545 (5th Cir.1981). In other words, a decision by a prison hearing officer satisfies due process as long as there is some evidence in the record to support that decision. Sales v. Murray, 862 F. Supp. 1511, 1516 (W.D. Va. 1994). In this case, Slaw's decision was supported by the Disciplinary Offense Report, which states that Sergeant Adams served plaintiff with the charges on June 21, 2013, at 8:53 a.m. Dkt. No. 49-1 at 47. Because Slaw's decision that plaintiff was served a written notice of the charges against him was supported by some evidence, the hearing comported with constitutional due process requirements, and the claims against Slaw will be dismissed.

**B. Defendant Hill**

An official told plaintiff that he had "contacted the Contract Liaison Office about the appeal's [sic] on August 26, 2013, and both [disciplinary charges] were under Consideration."

10

Amend. Compl. § IV. In plaintiff's view, this "is proof that [Hill,] who control's [sic] the Contract Liaison Office, had direct knowledge and possession of the appeal for the 131 Offense on August 26, 2013," before "it disappeared on August 27, 2013." Id. Plaintiff further states that Hill's "failure to act and intervene in correcting the due process violation" proves her bias against plaintiff and "placed [him] at a substantial disadvantagement [sic]." Id. Finally, plaintiff contends that "Hill was negligent [sic] when they [sic] did not dismiss the 131 offense at the same time or upon review of both disciplinary proceedings (131 &140A)" because "it is impossible to review either charged offense in any manner other than the same occurrence [sic], because both charge's [sic] arise from the same report's [sic], both item's [sic] of contraband came from the same bag at the same time and both charge's [sic] disciplinary hearing's [sic] where [sic] the same day one after the another." Dkt. No. 54 at 4.

Hill, as the VDOC Contract Monitor at LCC, was responsible for "reviewing offender disciplinary decisions to determine if procedures were followed and to ensure that the appropriate penalty was assessed by the Inmate Hearings Officer." Dkt. No. 49-2 at 1–2 ¶ 4. Pursuant to her duty, Hill "conducted the institutional review of [plaintiff's] #131 and #140 disciplinary charges on July 22, 2013," but she does not "remember receiving an appeal from [plaintiff] regarding the #131 disciplinary offense for his unauthorized cell phone possession." Id. at 2 ¶ 7. Additionally, Hill does "not recall telling [plaintiff] that his appeal was missing," and the records at LCC and the Virginia Corrections Information System database indicate that plaintiff did not appeal that charge. Id. at 2 ¶¶ 6–7.

Plaintiff's claims against Hill must fail for two reasons. First, he was granted the right to appeal both of his disciplinary charges. The record reflects that plaintiff appealed his charge for the possession of tobacco offense, but, for reasons not apparent in the record, there is no evidence of an appeal related to the possession of an unauthorized cell phone. Because plaintiff

11

was provided the opportunity to appeal his charges, and he was successful on his only documented appeal, he was not denied access to the appeals process established in the prison operating procedures. Dkt. No. 54-1 at 3. Second, even assuming that plaintiff had been denied a properly filed appeal, federal law does not mandate that prison officials provide inmates an opportunity to appeal disciplinary hearing findings. See Wolff, 418 U.S. at 565 (declining to hold that the omission of prison appeal procedures in the challenged prison regulations violated due process). "Thus, any violations of appeal procedures state at most a violation of state law and does not implicate federal due process rights." Brown v. Angelone, 938 F. Supp. 340, 345 (W.D. Va. 1996). For these reasons, defendants' Motion for Summary Judgment will be granted.

## V. Motion for Settlement Agreement

In a pleading styled "Motion for Settlement Agreement," plaintiff raises several new claims. See Dkt. No. 57. Because plaintiff's additional claims fail, his Motion for Settlement Agreement will be denied.

Plaintiff is not permitted to supplement his amended complaint with additional claims at this juncture. Despite its caption and plaintiff's introductory overture "to settle the suit for the constitutional violations," the pleading, which includes requests for relief without any corresponding concessions, more closely resembles an amended complaint. See Dkt. No. 57. As a result, the Court will liberally construe it as a motion to amend. As a matter of course, a party may amend any pleading once within the prescribed timeframe. Fed. R. Civ. P. 15. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Id. Here, plaintiff was given the opportunity to amend his complaint by Order dated June 22, 2016, see Dkt. No. 4. at 3, and he availed himself of that opportunity. Dkt. No. 8. He has neither sought consent from the defendants to amend his complaint, nor has he sought

leave of the court. In addition, for the reasons stated above, the remaining defendants are entitled to summary judgment in their favor. Accordingly, plaintiff's motion will be denied.

## VI. Conclusion

Because the undisputed record establishes that defendants D.A. Slaw and Marilyn L. Hill did not violate plaintiff's rights to due process, their Motion for Summary Judgment will be granted. In addition, plaintiff's Motion for Settlement Agreement will be denied. An appropriate Order shall issue.

Entered this 22nd day of June 2017.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge